UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                                                :

RICHARD J. McALLAN,                  :          01 Civ. 5281 (RJH)
                                                    :

                  Plaintiff,         :
                                                    :

          -against-            :        **<u>MEMORANDUM ORDER</u>**
                                                  :          **<u>AND OPINION</u>**
                                                  :

THOMAS VON ESSEN, et al.,        :
                                                  :

                  Defendants.    :
                                                  :
----------------------------------------------------------x
                                                :

RICHARD J. McALLAN,                  :          03 Civ. 8818 (RJH)
                                                    :

                  Plaintiff,         :
                                                    :

         -against-            :
                                                  :

MICHAEL BLOOMBERG, individually and as  :
Mayor of the City of New York, et al.,     :
                                                :

                  Defendants.    :
                                                  :
----------------------------------------------------------x

        Pro se plaintiff Richard McAllan commenced actions in 2001 and 2003 against the City

of New York ("City") and several city officials, pursuant to 42 U.S.C. § 1983, alleging that

defendants retaliated against him for asserting his First Amendment rights and for filing a False

Claims Act ("FCA") action against them.  Plaintiff also alleges that defendants violated his due

process rights by subjecting him to a disciplinary proceeding.  Defendants move for summary

judgment dismissing the Second Amended Consolidated Complaint.   For the reasons stated

below, defendants' motion is granted.

**BACKGROUND**

This case arises from plaintiff's employment in the Emergency Medical Services ("EMS") Telemetry Unit of the New York City Fire Department ("FDNY"), which provides medical guidance to EMS field units. Plaintiff, a vocal and litigious critic of the FDNY and the City, filed suit in 2001 (the "*Von Essen* action") against various municipal entities, officials, and employees, including then-Mayor Rudolph Giuliani, alleging, *inter alia*, that defendants changed his duty status from light-duty to full-duty, threatened to remove him from his position within the FDNY, and otherwise treated him "unprofessionally," all in retaliation for exercising his First Amendment rights and for filing an FCA action against the City in 1998. Plaintiff also alleged that FDNY media policy had the effect of chilling plaintiff's speech; the Court has already dismissed this claim. In 2004, plaintiff served many of the same defendants with an amended complaint in a second action (the "*Bloomberg* action"), in which he alleges denial of due process in connection with a disciplinary hearing, retaliatory impairment of his pension rights, and discovery misconduct by defendants in the *Von Essen* action. The Court has previously dismissed the claims related to discovery misconduct. The Court consolidated the *Von Essen* and *Bloomberg* actions and plaintiff filed a Second Amended Consolidated Complaint.

The facts are laid out fully in the detailed Report and Recommendation ("Report") of Magistrate Judge Henry B. Pitman, dated September 29, 2006, familiarity with which is assumed. Judge Pitman recommended granting defendants' motion for summary judgment and dismissing the Second Amended Consolidated Complaint. Plaintiff filed timely objections ("Objections"), which defendants oppose, in which plaintiff argues that he has raised genuine issues of fact regarding whether defendants' actions towards him have been retaliatory. Plaintiff also renewed his request, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, to stay

the motion for summary judgment while plaintiff conducts additional discovery.  Finally, plaintiff has requested review of two orders issued by Judge Pitman: an order denying plaintiff's motion for sanctions and an order denying plaintiff's request for leave to file a Second Supplemental Affirmation in opposition to defendants' motion for summary judgment.[1]

## DISCUSSION

### I.      Plaintiff's Rule 56(f) Motion

Plaintiff has submitted a purported Rule 56(f) affidavit (Pl.'s 56.1 Counterstatement ¶¶ 241–248), arguing that summary judgment would be premature in light of the fact that discovery has not been completed.  Under Rule 56(f) of the Federal Rules of Civil Procedure, parties lacking information necessary to oppose a summary judgment motion may seek further discovery.  *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 573 (2d Cir. 2005).  To oppose a motion on the basis of Rule 56(f), a party must file an affidavit detailing: "(1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."  *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999) (quoting *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995)).

---

[1] By letter dated August 16, 2007, plaintiff, noting this judge's personal and professional relationship with former New York Governor George Pataki, requested the Court to recuse itself from the matter.  Pursuant to 28 U.S.C. § 455, "Any . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The Supreme Court has stated that § 455(a) requires judicial recusal "'if a reasonable person, *knowing all the circumstances*, would expect that the judge would have actual knowledge' of his interest or bias in the case."  *Sao Paulo State of the Federative Republic of Brazil v. Am. Tobacco Co.*, 535 U.S. 229, 232–33 (2002) (citation omitted).  Here, former Governor Pataki is not named as a defendant, and the Court has no relationship or personal bias towards any of the parties to the case.  "Where a case . . . involves remote, contingent, indirect or speculative interests, disqualification is not required."  *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992).  Accordingly, the Court denies plaintiff's letter request.

Plaintiff has not satisfied the second prong of this test.  Plaintiff argues that further discovery will establish the basis for defendants' alleged retaliatory animus towards him. Specifically, he argues that defendants have in their possession information that will prove that his criticism of the City's public safety radio system and FDNY contracts with a private ambulance company was valid, and, as a result, a jury will be more likely to conclude that defendants retaliated against him.  (Objections ¶ 63.)  However, as this Court has reminded plaintiff on several occasions, *see, e.g., McAllan v. Von Essen*, 2006 U.S. Dist. LEXIS 68138, 2006 WL 2724029, at *1 (S.D.N.Y. Sept. 22, 2006), this action addresses whether defendants retaliated against plaintiff because he filed a False Claims Act case and engaged in protected First Amendment activities criticizing the City and the FDNY; it does not address whether the underlying False Claims Act action had merit or whether plaintiff's comments were true.  It is irrelevant for purposes of the First Amendment retaliation analysis whether the protected speech was also accurate.  *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 273 (1964) ("[N]either factual error nor defamatory content suffices to remove the constitutional shield from criticism of official conduct."); *Reuland v. Hynes*, 460 F.3d 409, 414 (2d Cir. 2006) ("False speech, as well as hyperbole, is still entitled to First Amendment protection, as long as it is not made with knowledge or reckless disregard of its falsity.").  Accordingly, the Report correctly assumes that plaintiff's comments on these issues qualify as constitutionally protected speech.  (*See* Report 19.)  Because additional discovery regarding the truth of plaintiff's comments will not uncover any additional evidence relevant to this action, plaintiff's Rule 56(f) motion is denied.

## II.     Review of Magistrate Judge's Orders

Plaintiff requests review of two orders issued by Judge Pitman: (1) an order denying plaintiff's motion for sanctions, *see McAllan v. Von Essen*, 2006 U.S. Dist. LEXIS 68138, 2006

WL 2724029 (S.D.N.Y. Sept. 22, 2006), and (2) an order denying plaintiff's request for leave to file a Second Supplemental Affirmation in opposition to defendants' motion for summary judgment.  A judge may reconsider a pretrial order regarding nondispositive issues "where it has been shown that the magistrate's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).  A decision is "clearly erroneous" when the Court is, "upon review of the entire record, [] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006).  "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion."  *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587 (PKL), 2000 U.S. Dist. LEXIS 4892, 2000 WL 420548, at *2 (S.D.N.Y. Apr. 17, 2000).

A matter is nondispositive if it "does not dispose of the litigation."  *Nikkal Indus., Ltd. v. Salton*, Inc., 689 F. Supp. 187, 189 (S.D.N.Y. 1988).  Orders concerning Rule 11 sanctions and orders denying supplemental briefing are both considered nondispositive and are thus subject to the "clearly erroneous or contrary to law" standard.  *See Weeks Stevedoring Co. v. Raymond Int'l Builders, Inc.*, 174 F.R.D. 301, 303–04 (S.D.N.Y. 1997) ("The imposition of sanctions is reviewable under the 'clearly erroneous or contrary to law' standard unless the sanction itself can be considered dispositive of a claim.").

Here, plaintiff's objections to Judge Pitman's order denying sanctions are completely groundless.  This Court has already rejected plaintiff's argument that the determination of the New York City Workers' Compensation Board that he is "permanently partially disabled" has preclusive effect with respect to the FDNY's determination of his duty status.  *See McAllan v.*

*Von Essen*, 2004 U.S. Dist. LEXIS 17052, 2004 WL 1907752, at *2 (S.D.N.Y. Aug. 25, 2004) (denying plaintiff's motion for reconsideration of order denying plaintiff's motion for partial summary judgment in the *Von Essen* action and granting in part defendants' motion to dismiss the amended complaint in the *Bloomberg* action). The Court also agrees with Judge Pitman's determination that none of the evidence produced by plaintiff would compel defendants to concede that plaintiff had been assigned to some sort of permanent light-duty status.

The Court likewise finds no error in Judge Pitman's Order denying plaintiff leave to file a Second Supplemental Affirmation in opposition to defendants' motion for summary judgment. In his proposed affirmation, which the Court has reviewed, plaintiff offers evidence that he claims demonstrates that his criticism of the FDNY and other city agencies was accurate. As the Court has just ruled, however, evidence related to the accuracy of plaintiff's criticism of the FDNY and the City is in no way related to plaintiff's retaliation claims. The Court therefore affirms Judge Pitman's order of August 17, 2006, denying plaintiff leave to file the affirmation.

## III.    Plaintiff's Objections to the Report and Recommendation

### A.    Standard of Review for Magistrate Judge's Report and Recommendation

A district court adopts a Magistrate Judge's report and recommendation when no clear error appears on the face of the record. *See Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). However, the court is required to make a de novo determination of those portions of a report to which objection is made, 28 U.S.C. § 636(b)(1)(C), by reviewing "the Report, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Badhan v. Lab. Corp. of Am.*, 234 F. Supp. 2d 313, 316 (S.D.N.Y. 2002). The court may then accept, reject, or modify in whole or in part recommendations of the Magistrate Judge. *See Nelson*, 618 F. Supp. at 1189. If, however, the party "makes only conclusory or general

objections, or simply reiterates his original arguments, the Court reviews the Report and

Recommendation only for clear error." *Sanchez v. Dankert*, No. 03 Civ. 2276 (LTS), 2004 U.S.

Dist. LEXIS 3716, 2004 WL 439502, at *1 (S.D.N.Y. Mar. 9, 2004); *accord Johnson v. City*

*Univ. of New York*, No. 00 CV 4964 (WK), 2003 U.S. Dist. LEXIS 10615, 2003 WL 21435469,

at *1 (S.D.N.Y. June 19, 2003); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513

(S.D.N.Y. 1997).  "If no objections are filed, or where objections are merely perfunctory

responses, argued in an attempt to engage the district court in a rehashing of the same arguments

set forth in the original petition, reviewing courts should review a report and recommendation for

clear error." *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (internal

quotation marks and citations omitted).

 The Court has conducted a de novo review of the Report and the underlying motions.

The Court agrees with all of Judge Pitman's recommendations but writes separately to address

certain of plaintiff's objections and to elaborate on additional grounds for granting summary

judgment on plaintiff's retaliation claims.

### B. Summary Judgment Standard

 Summary judgment is appropriate if "there is no genuine issue as to any material fact and

. . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  The

moving party must demonstrate that no genuine issue exists as to any material fact.  *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  It can satisfy this burden by showing that the

opposing party is unable to establish an element essential to that party's case and on which that

party would bear the burden of proof at trial.  *See id.* at 321; *Gallo v. Prudential Servs.*, 22 F.3d

1219, 1223–24 (2d Cir. 1994).  In reviewing the record, the district court must assess the

evidence in "the light most favorable to the non-moving party," resolve all ambiguities, and

"draw all reasonable inferences" in its favor. *Am. Cas. Co. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir. 1994). However, with respect to a properly supported summary judgment motion, the party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B.    Plaintiff's Objections to the Report

#### 1.    First Amendment Retaliation Claim

As set forth in the Report, "to state a prima facie case of retaliation under § 1983, a plaintiff must demonstrate that: "(1) his or her speech was constitutionally protected; (2) he or she suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination." *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004). Even where a public employee plaintiff makes out a prima facie case, a public employer may avoid liability by showing that it would have taken the same action even in the absence of the protected activity. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–87 (1977). The principle that a public employer cannot be held liable for retaliation if it would have taken the adverse action absent the employee's protected conduct "prevents an employee who engages in unprotected conduct from escaping discipline for that conduct by the fact that it was related to protected conduct." *Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998).

(a)        **Prima Facie Case**

The Report assumes that plaintiff's testimony before the city council, media interviews, and fliers were protected speech.[2]  With respect to the second and third prongs of the test, however, the Report concludes that plaintiff did not suffer an adverse employment action and, in any case, that plaintiff has failed to show any causal relationship between those activities and his termination.  Plaintiff objects to each of these conclusions.

The Second Circuit has held that "actionable retaliation" in the First Amendment context is that which "'well might have dissuaded a reasonable worker [from asserting First Amendment-protected rights].'"  *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) (quoting *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2415 (2006)).  Although a public employee plaintiff may be required to show that the adverse action is of a type that, objectively, "*would* deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," *Washington*, 373 F.3d at 320 (emphasis added), a plaintiff is not required to show that the defendants' action had an actual chilling effect.  *Morrison v. Johnson*, 429 F.3d 48, 51 (2d Cir. 2005).  Nevertheless, the alleged act of retaliation must be more than de minimis.  *See Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (collecting cases).  "Indeed, it would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Zelnik*, 464 F.3d at 226 (quotation omitted).

---

[2] Plaintiff objects to the Report's conclusion that plaintiff's "attempts to enforce the statutory protections granted him under the NYS Workers Compensation Law, EMS Operating Guide Procedures and applicable collective agreements are not speech protected by the First Amendment."  (Objections 6.)  Nevertheless, the Court agrees with the Report's conclusion because these matters were of personal, not public, concern.  "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  *Connick v. Myers*, 461 U.S. 138, 147 (1983). (*See* Report 16–19.)

In his opposition to defendants' motion for summary judgment, plaintiff argued that defendants' refusal to acknowledge his permanent light-duty status, the elimination of his position within the Telemetry Unit, the incident on May 18, 2001, in which plaintiff was asked to leave the Bureau of Health Services ("BHS") Clinic, and defendants' refusal to upgrade his pension all constituted retaliatory conduct that would deter similarly situated individuals who wished to protest the City's practices and policies. The Court agrees with the Report's conclusion, however, that no reasonable fact finder could conclude that the incidents referred to in the Complaint occurred in the manner in which plaintiff describes them or that they amounted to adverse employment actions. (*See* Report 21–25.) For instance, plaintiff argues at length that the determination of the New York City Workers' Compensation Board that he is "permanently partially disabled" barred the FDNY from ever reevaluating his duty status, an argument that is wholly unsubstantiated by the record, and one that the Court has previously rejected. (*See supra* page 5.) He also argues that defendants forced him into retirement by eliminating his position within the Telemetry Unit while he was out on line-of-duty injury leave, but Judge Pitman rightly concluded that plaintiff has not produced any evidence that defendants told him that he could not return to the Telemetry Unit or that he would be demoted. (*See* Report 23.) The Court also agrees with the Report (*see id.* at 21 n. 4) that no reasonable juror could conclude that other harassment alleged by plaintiff, such as the alleged temporary cancellation of plaintiff's health insurance after he retired or the dispute over time sheets, would deter an individual of ordinary firmness, situated similarly to plaintiff, from exercising his free speech rights under the facts in this case.[3]  *See Zelnik*, 464 F.3d at 227.

---

[3] Plaintiff also argues that defendants have recently retaliated against him by declining to pay for more than two visits a month to the chiropractor through his Workers' Compensation benefits. (*See* Pl.'s 56.1 Counterstatement ¶¶ 290–298; Objections 21.) The documents submitted by the parties indicate that, while the parties dispute the extent of coverage authorized by the most recent decision of the State Workers' Compensation Board, the City

In his Objections, plaintiff argues for the first time that in pursuing disciplinary charges against him, the FDNY was retaliating against plaintiff's exercise of his First Amendment rights. (*See* Report 21 n.4; Obj. 11, 17–18.).[4]  The FDNY filed disciplinary charges on May 24, 2001 against plaintiff for failing to obey an order to attend a medical examination on May 3, 2001 and an order to vacate the BHS building on May 18, 2001.  (*See* Eichenholtz Decl. Ex. W; Pl.'s Ex. 36.)  After an informal hearing held on June 28, 2001, the hearing officer determined that charges were established and recommended a penalty of twenty days pay.  (*See* Eichenholtz Decl. Ex. W.)  Plaintiff appealed this determination to the Office of Administrative Trials and Hearings ("OATH"), an independent city charter agency that is authorized to conduct adjudicatory hearings for city agencies.  An OATH Administrative Law Judge ("ALJ") conducted an independent hearing on September 18 and November 10, 2003, at which plaintiff was represented by counsel.  (*See* Eichenholtz Decl. Ex. F ("ALJ Op.") at 1; *Id.* Exs.D, E (hearing transcripts).)  In a written opinion issued on March 4, 2004, the ALJ found that plaintiff "engaged in misconduct by failing to obey a written order to report for a medical examination," but that the evidence did not support a finding that respondent refused his supervisors' verbal orders to leave BHS on May 18, 2001.[5]  (ALJ Op. 10.)  The ALJ recommended that plaintiff be

---

[4] continues to pay some benefits.  (*See* Pl.'s Ex. 72, Y; Defs.' Exs. UU, VV, WW.)  Moreover, plaintiff has offered no evidence (other than his ipse dixit) that he is in fact entitled to the benefits he seeks.  In any event, the Court concludes that this dispute does not constitute an "adverse employment action," and further that there is no evidence of a causal connection between plaintiff's protected speech and the alleged reduction in benefits.

[4] Plaintiff states that he raised this argument in paragraph 97 of the Second Amended Complaint, but there he merely alleged that defendants "engaged in fraud on the [administrative] tribunal and the Federal Court by prosecuting [plaintiff] for charges which they knew—or should have known—had been brought in bad faith against this writer." The Complaint explains that defendants' actions were in "bad faith" because defendants argued to the administrative law judge that they were not bound by their stipulation to plaintiff's "permanent partially disabled" status before the Workers' Compensation Board.  This claim was rejected by Judge Pitman in his denial of plaintiff's motion for sanctions.  (*See supra* page 5.)  The Complaint did not allege that defendants retaliated against plaintiff in violation of his First Amendment Rights or the False Claims Act by filing false disciplinary charges.

[5] The ALJ also rejected plaintiff's argument that the disciplinary proceeding was commenced in retaliation for respondent having filed the FCA complaint in federal court.  (*See* ALJ Op. 8–10.)

suspended for seven days without pay for the act of insubordination on May 2 and recommended dismissal of the charges related to the May 18 incident.  (*Id.* at 13.)

The Court is aware of at least one Second Circuit case in which disciplinary proceedings were found to constitute an employment adverse action for purposes of a retaliation claim.  In *Washington v. County of Rockland*, the county sheriff's department filed administrative disciplinary charges against three corrections officers for promoting prison contraband.  *See Washington*, 373 F.3d at 314.  The officers were also suspended for thirty days without pay pending the charges.  *Id.*  Ultimately all three officers were found not guilty of promoting prison contraband and their loss of pay was to be restored.  *Washington v. County of Rockland*, 211 F. Supp. 2d 507, 510 (S.D.N.Y. 2002).  In a subsequent lawsuit, the officers argued that the disciplinary proceedings and suspension without pay were retaliation for their decision to speak out against defendants' allegedly discriminatory policies and practices.  *Washington*, 373 F.3d at 320.  The district court concluded that no adverse employment action had occurred, but the Second Circuit disagreed, finding that "the threat of administrative disciplinary proceedings, and the concomitant thirty-day suspension without pay, could have a deterrent effect on other officers who wished to protest the Department's allegedly discriminatory practices and policies."  *Id.*

Although plaintiff in the instant case was also subjected to disciplinary proceedings, his situation is distinguishable in key ways from that of the plaintiffs in *Washington*: specifically, he was not suspended and his pay was not docked while the disciplinary charges were pending, and, instead of being cleared of charges like the *Washington* plaintiffs, plaintiff was found to have "engaged in misconduct by refusing a written order."  (ALJ Op. 13.)  Furthermore, plaintiff ultimately did not receive any punishment because he retired before the charges could be fully

adjudicated.  (Opp'n to Pl.'s Objections 10.[6])  In light of these circumstances, it is doubtful whether plaintiff's disciplinary proceedings would have deterred other FDNY employees of ordinary firmness from exercising their free speech rights.

Even if the Court were to conclude that initiating disciplinary charges constituted an adverse employment action, however, the Court agrees with the Report's conclusion that plaintiff has failed to establish a prima facie case of First Amendment retaliation, as he has not established a causal connection between his protected speech and the disciplinary charges.  The sole evidence of retaliatory animus relied upon by plaintiff is the temporal proximity of his testimony concerning the allegedly defective public safety radios before the City Council in April 2001 and the filing of disciplinary charges on May 24, 2001.  (*See* Eichenholtz Decl. Ex. W; Pl.'s Ex. 36.)  Although the timing of a defendant's conduct may be circumstantial evidence of retaliatory motive, *see Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), here the fact that plaintiff frequently criticized the City and the FDNY renders unremarkable any temporal connection between any particular speech by plaintiff and the filing of disciplinary charges.  *See McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir. 1999).  As Judge Pitman observed, "Where, as here, a party has engaged in numerous acts of protected speech over an extended period of time, the inference of causation that can be drawn from the temporal proximity between the protected speech and allegedly adverse employment actions is extremely attenuated and is insufficient to give rise to a genuine issue of fact."  (Report 29 (citing *McCullough*, 187 F.3d at 280).)

---

[6] Although the parties do not explicitly address this point, it appears that the ALJ's recommendation was pending before the FDNY Commissioner for final action at the time that plaintiff retired.

**(b)     Defendants' Rebuttal**[7]

A defendant may defeat a prima facie case of First Amendment retaliation at the summary judgment stage if it can show that no genuine issue of material fact exists to preclude the conclusion, based on a preponderance of the evidence, that defendant "would have taken the same adverse employment action even in the absence of the protected conduct." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Heil*, 147 F.3d at 110 (affirming summary judgment for defendants where plaintiff would have been disciplined even in the absence of his protected speech).  The defendant need not show that the protected activity had no bearing at all on the adverse decision, but only that the decision would have been made regardless of plaintiff's protected speech, for legitimate reasons. *See White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1060–61 (2d Cir. 1993) (reversing judgment in plaintiffs' favor where plaintiffs would have been dismissed from their employment even without consideration of the protected speech).  The First Amendment does not allow an employee to place himself or herself "in a better position as a result of protected conduct than he would have occupied had he done nothing." *Doyle*, 429 U.S. at 278.

Even assuming that plaintiff's speech was a motivating factor in defendants' decision to file disciplinary charges, defendants' uncontroverted evidence demonstrates that defendants' initiation of the disciplinary proceedings was justified by a panoply of legitimate, nonretaliatory reasons, and would have occurred regardless of plaintiff's protected speech.  The ALJ—after conducting an evidentiary hearing where plaintiff had and exercised an opportunity to be heard—found plaintiff to be guilty of insubordination.  The ALJ's findings were supported by substantial evidence.  Plaintiff's supervisor, Deputy Chief Mark Steffens, testified that in March

---

[7] The Report did not address defendants' rebuttal because it concluded that plaintiff had failed to establish a prima facie case of retaliation.  (*See* Report 31.)

2001 he organized a Department-wide initiative to identify paramedics functioning in "off-line"

positions so that the Department could redeploy qualified paramedics to field posts and use their

vacant lines to accommodate paramedics entitled to modified assignments under the Americans

with Disabilities Act.  (*Id.* at 2.)  All fourteen paramedics assigned to Telemetry were ordered to

participate in medical evaluations; of the thirteen paramedics who complied with the order, none

were returned to full-duty posts or put on disability retirement.  (*Id.*)  When plaintiff complained

about the exam through his attorney, the assistant fire commissioner sent plaintiff a letter

assuring him that disabled paramedics could request reasonable accommodations.  (*Id.* at 4–8.)

Plaintiff nevertheless disregarded a direct order to appear for the May 3 examination.  (*Id.* at 8.)

The ALJ explicitly rejected plaintiff's argument that the disciplinary charges were retaliatory:

> [T]he clear weight of the evidence established that the disciplinary action taken
> against [plaintiff] was predicated on his refusal to obey a proper and unambiguous
> order. . . . [Plaintiff's] stubborn and unilateral refusal thwarted the Defendants'
> legitimate interest to maximize its workforce by accurately classifying the work
> status of paramedics and making appropriate placements.  *Within this context, the
> Department had a compelling and legitimate basis for commencing this
> disciplinary hearing.*

(*Id.* at 10 (emphasis added).)

Although plaintiff continues to argue that the initiation of disciplinary proceedings

against him was "in bad faith" (Objections 17–18), plaintiff had a full and fair opportunity in the

OATH administrative proceeding to litigate the propriety of his failure to obey the May 3 order

and is thus estopped from denying his misconduct.  *See Dudzik v. City of New York*, No. 01 Civ.

2450 (NRB), 2003 U.S. Dist. LEXIS 1287, 2003 WL 203226, at *8 (S.D.N.Y. Jan. 29, 2003)

(discussing preclusive effect of factual findings made by an ALJ at an OATH administrative

procedure); *see also University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) ("[W]hen a

state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it

which the parties have had an adequate opportunity to litigate, federal courts must give the

agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." (internal citation and quotation marks omitted)); *Doe v. Pfrommer*, 148 F.3d 73, 79 (2d Cir. 1998) (district court may give administrative law judge's findings preclusive effect to bar Section 1983 claim); *cf. Rosenblatt v. City of New York*, No. 05 Civ. 5521 (GEL), 2007 U.S. Dist. LEXIS 55853, 2007 WL 2197835, at *9 (S.D.N.Y. July 30, 2007) (holding that plaintiff was estopped from relitigating findings made by two administrative law judges and affirmed by the New York Appellate Division).  In any event, plaintiff offers no evidence to contradict the ALJ's finding (or the underlying testimony of plaintiff's supervisor), that he disobeyed a direct order; he merely seeks to justify his decision to do so on the ground that the order was improper because he had already been designated as "permanently partially disabled" by the Workers' Compensation Board.  (*See* Pl.'s 56.1 Counterstatement ¶¶ 96–107.)  On this record, no reasonable fact finder could conclude that defendants would not have pressed disciplinary charges against plaintiff for refusing to obey a direct order to report for a physical examination if he had not criticized the FDNY before the City Council in April 2001.

As for the May 18 incident, although the ALJ ultimately found that "the testimony described a reluctant departure rather than an outright refusal" by plaintiff to obey his supervisor's orders, the ALJ called it a "close case."  (*See id.* at 11.)  Defendants have produced evidence that the FDNY filed disciplinary charges because plaintiff refused to leave BHS immediately when ordered to do so by Captain Steffens, a point undisputed by plaintiff.  (*See id.* at 11.)  The fact that plaintiff was cleared on one of the two insubordination charges brought against him does not undercut defendants' unrebutted evidence that they would have pressed disciplinary charges regardless of plaintiff's protected speech.

In summary, the Court adopts the Report's conclusion that plaintiff has failed to establish a prima facie case of First Amendment retaliation. Any inference of retaliatory animus arising from the temporal connection between defendants' adverse employment action—the filing of disciplinary charges—and plaintiff's protected speech is weak and fails to give rise to a genuine issue of material fact. Regardless of the strength of plaintiff's prima facie case, however, there is no question that plaintiff's acknowledged refusal to obey a direct order would have resulted in the initiation of disciplinary proceedings. Accordingly, defendants' motion for summary judgment on this claim is granted.

## 2.   False Claims Act Retaliation

Plaintiff also alleges that defendants retaliated against him in violation of the so-called "whistleblower" provision of the FCA, 31 U.S.C. § 3730(h). Section 3730(h) provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiating of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

This provision protects employees who assist the government in the investigation and prosecution of violations of the False Claims Act. *See Neal v. Honeywell Inc.*, 33 F.3d 860, 861 (7th Cir. 1994). Congress enacted § 3730(h) "to encourage any individuals knowing of Government fraud to bring that information forward." S. Rep. No. 99-345, at 4 (1986), reprinted in 1986 U.S.C.C.A.N. 5266. As set forth in the Report and Recommendation, a claim for illegal retaliation under § 3730(h) requires a plaintiff to show "(1) the employee engaged in conduct protected under the FCA; (2) the employer knew that the employee was engaged in such conduct; and (3) the employer discharged, discriminated against or otherwise retaliated against

the employee because of the protected conduct." *United States ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 102 (D. Conn. 2006). The inquiry as to whether an employee engaged in protected conduct involves determining whether an employee's actions sufficiently furthered an action filed or to be filed under the FCA, and, thus, equated to "protected conduct." *Hutchins v. Wilentz*, 253 F.3d 176, 187 (3d Cir. 2001) (quoting *McKenzie v. Bellsouth Telecomm., Inc.*, 219 F.3d 508, 515 (6th Cir. 2000)).

The Court affirms the Report's conclusions that plaintiff has not satisfied the first and third prongs of the test. The Report correctly rejects plaintiff's argument that by filing an FCA action based on publicly-available information, he engaged in protected conduct. In plaintiff's case, filing a qui tam action against the City of New York and the New York City Health and Hospitals Corporation was not "in furtherance of an action under [the FCA]," 31 U.S.C. § 3730(h), because all that plaintiff did was "cobble together an FCA complaint out of information that was already in the public record." (Report 34 (citing *United States ex rel. McAllan v. City of New York*, No. 98 Civ. 3349 (WK), 1999 U.S. Dist. LEXIS 6382, 1999 WL 280416, at *6 (S.D.N.Y. May 5, 1999))); *see also Hoyte v. Am. Nat'l Red Cross*, 439 F. Supp. 2d 38, 45 (D.D.C. 2006) (dismissing plaintiff's claim for wrongful discharge in violation of § 3730(h) because actions she took allegedly leading to her discharge could not have been protected since there was no viable FCA claim).

The Court also agrees with Judge Pitman that plaintiff has failed to provide any evidence that would permit a reasonable fact finder to find a nexus between the challenged employment actions and the FCA suit. Plaintiff notes in his Objections that the appeal of his FCA action was argued at the Second Circuit on March 8, 2001, shortly before the incidents in May 2001 described above. However, that does not change the fact that plaintiff had continued to work for

almost three years after commencing his FCA action without incident.  Thus, there is no temporal proximity between the initiation of an FCA action and the allegedly retaliatory action sufficient to give rise to an inference of causation.  In addition, for the reasons set forth by the Court in its analysis of plaintiff's First Amendment retaliation claim, the Court finds that plaintiff has not adequately alleged any employment decision sufficiently adverse to deter plaintiff from engaging in protected activities and defendants have provided substantial evidence that they would have taken the same actions even in the absence of an FCA suit.

Because the Court finds that there are no genuine issues of material fact with respect to plaintiff's retaliation claim under the whistleblower provision of the FCA, defendants' motion for summary judgment on plaintiff's second cause of action is granted.

### 3.    Plaintiff's Constitutional Claims

Finally, the Court affirms the Report's conclusion that plaintiff's due process and *Monell* claims are without merit.  Plaintiff's only objection to this aspect of the Report is that the FCA entitles him to be "'made whole' in accordance with Title Seven principles" (Objections 23), by which the Court understands plaintiff to argue that he was entitled to file his FCA retaliation claim against defendants in federal court, rather than having to argue it in an Article 78 proceeding.  (*See id.* (citing to *Moore v. Cal. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838 (9th Cir. 2002), in which the Ninth Circuit reversed a district court's grant of summary judgment dismissing an employee's FCA retaliation claim).)  The ALJ did not adjudicate plaintiff's FCA retaliation claim, however; that claim has been considered and rejected here.  The ALJ merely made findings regarding the disciplinary charges against plaintiff, and plaintiff could have challenged those findings in an Article 78 proceeding.  (*See* Report 38–40); *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding . . . constitutes a wholly adequate post-

deprivation hearing for due process purposes."). Accordingly, summary judgment on plaintiff's constitutional claims is granted.

## CONCLUSION

Plaintiff's objections [122] to Judge Pitman's Report are without merit and are overruled. The Report and Recommendation is adopted. The Court also denies plaintiff's motions [114, 119] to vacate Judge Pitman's orders. Plaintiff's new motion for summary judgment [128], which plaintiff never sought leave to file, is also denied on procedural and substantive grounds. The Second Amended Consolidated Complaint is hereby dismissed, and the Clerk of the Court is directed to close the consolidated cases.

SO ORDERED.

Dated: New York, New York
September 26, 2007

Richard J. Holwell
United States District Judge

20